## COMMONWEALTH *v.* M'EWEN AND CROSSMAN.

[Charged on oath of Eleanor M'Ewen, with a conspiracy to produce an abortion, and producing the same.]

AFTER the defendants were arrested, and before the hearing of the complaint, a rule was taken to show cause why the warrant should not be quashed, on the ground that the wife, on whose oath the process issued, could not legally testify.

After argument, the RECORDER on the 24th of March, 1842, decided as follows:

This case comes before me on the oath of Mrs. M'Ewen, wife of one of the defendants—on her affidavit I issued process. The defendants appeared and entered bail for a hearing; owing to the engagements of the learned counsel on both sides, the hearing was postponed from time to time. During the interval which elapsed between the last adjournment and the time to which the hearing was adjourned, William L. Hirst esq., counsel with the defendants, moved for a rule on the prosecutor to show cause why the warrant should not be quashed. The rule was granted. As the questions involved in this demurrer are vital, and though but a preliminary step in the case, is one upon which the whole case rests, I have thought it proper to give my views at length in regard to it, that the parties may have any benefit, if any arises therefrom.

It is contended in support of this motion: First, that the person on whose oath the process issued, was the wife of one of the parties charged. Second, that the wife is incompetent to testify for or against her husband, on a trial to which the husband is a party. Third, that the warrant having been issued on the oath of the wife of one of the persons charged, and who, on this account, would be incompetent to testify at the trial, a fortiori, her oath was null and void in contemplation of law, and ipse causa, the warrant must be quashed.

The general rule contended for, by the defendants' counsel, is admitted by the counsel for the commonwealth; but they resist the motion on the ground that

2*

this case, comes under the exceptions to the general rule recognised by the books, and in the practice of all criminal courts.

In considering the exceptions to this process, there appears but one on which the case turns, and to this I shall confine my attention ; the others are but sequences to the question, " can a wife testify against her husband ?"

In Blackstone's Commentaries 443: " But," says the author, " in trials of any sort, they (husband and wife) are not allowed to be evidence for or against each other ; but where the offence is directly against the person of the wife, this rule has been usually dispensed with."

Hawkins, in his Pleas of the Crown, speaking of husband and wife, writes thus : " But in trials of any sort they are not allowed to be evidence for or against each other ;" 1 H. P. C. 3 : and again, " But where the crime is a violation done by either to the person of the other, the husband may be evidence against the wife, and the wife against the husband ;" 2 H. P. C. 216. In note to Thomas' edition of Coke's Institutes, we find, speaking of the general rule on this subject, the following : " Yet some exceptions have been allowed to this general rule, in case of evident necessity ;" Thomas, vol. 156.

Some exceptions, says Starkie, to the general rule, are founded on evident necessity, where the facts are presumed to be exclusively within the knowledge of the wife. The wife is a witness, ex necessitate, on the charge against her husband, of violence committed on her person. So the dying declarations of the wife against the husband, are admissible in the case of

murder; 2 Starkie, Rex *v.* Azire, 1 Str. 643. In lady Lawley's case, the affidavit of the wife was allowed to be received in court, to ground a criminal information against her husband. It is held in Reeves' Domestic Relations 66, that a violation (by the husband or wife) of each other's rights, by an unjustifiable violence, is a breach of the laws of society, for which they are liable, *criminaliter*.

These are the primary principles of law, which all decisions from the bench, and every legal commentator have recognised, and around which ameliorated criminal jurisprudence has gathered and taken its efficacy.

From these authorities, two elementary principles are clearly to be deduced. 1st. That as husband and wife are one, they are unable, as a general rule, to testify the one for or against the other. 2d. And in those cases in which the persons of the husband or wife have been assailed or threatened, the one can testify against the party assailant. Under such circumstances, ex necessitati rei, the husband or wife can give evidence against the one or the other, violating the personal rights of either.

" The reason of the law is the spirit of the law," and it is obvious, that gross outrages might be committed by the husband against the wife, or the wife against the husband, and go unpunished, if neither party were permitted by this general rule of the law, to complain and give testimony against the wrongdoer. Thus would arise a wrong without a remedy, which the law is said never to permit, and which would surely be against its reason and spirit.

Having examined the principle, it only remains to

investigate the leading decisions as to the point raised here, and ascertain how far the courts have regulated its operation.

Among the most prominent of the cases, is that of lord Audley, 1 State Trials 387. This was a charge made against lord Audley, who was tried on indictment for a rape on his own wife, before lord chief justices Hyde and Richardson, and baron Denman and special commissioners. Upon the question being put to the judges, " whether the wife in this case, might be a witness against her husband," they answered " she might, for she was the party wronged, otherwise she might be abused." Although some exceptions were taken to this opinion at the time, the principle involved is sustained in the decision in lady Lawley's case. B. N. P. 287.

In 6 Bin. 283, the law is laid down to be that "from the necessity of the case, on common law principles," husband and wife can give testimony, but give it only where this necessity exists.

In the Commonwealth *v.* Striker, and Same *v.* Connelley, 1 Browne's Rep., the court recognises the legality of a married woman's testimony, " ex necessitati rei," and they fully concur in the ruling in the case of the King *v.* Reading. 1 Ashmead 259, Commonwealth *v.* Wentz, the court maintain the same rule of law. Under the title Husband and Wife, in 2 Kent's Commentaries 178, the doctrine of *necessity* is conceded, and in the case of Bentley *v.* Cook, 3 Dereg. Rep. 422, lord Mansfield said, " that there had never been an instance in a civil or criminal case, where the husband or wife had been permitted to be a witness for or against

each other, *except* in case of particular necessity, as where the wife would otherwise be exposed, without remedy, to personal injury."

From these authorities it appears clear, that as a general rule, the husband and wife cannot testify for or against each other, but in such cases where the personal rights of either have been violated by the other, and then ex necessitati, the sufferer can complain or inform and testify against the aggressor. This exception appears to me susceptible of a qualification. I think that if the outrage of the person of the party complaining, can be proved by other evidence, than the party aggrieved, the testimony of the husband or wife, as the case may be, would not be admissible;—for example, if a conspiracy existed to do the husband bodily harm, and the wife was a joint conspirator, and the intention, design and existence of this unlawful combination, could be made manifest by clear testimony, I think in such a case, the husband could not testify against either his wife, or any of the conspirators—even though the attorney-general should enter a nolle prosequi, as to the wife. It also appears to me that in such a case, a warrant issued against the conspirators on the oath of the husband, would be quashed.

When the present case is compared with these principles and decisions, I am forced to the conviction, that the motion to quash the warrant cannot be sustained. The wife of M'Ewen charges her husband and Dr. Crossman, with a conspiracy to produce an abortion, and producing the same. The abortion takes place, it is a violence to her person; an outrage, if true, on her natural rights by her own husband and another; she is

the only person who has suffered, and she the only witness to prove the crime. She is the abused party, and from the necessity of the case, the wrong can be proven but by her oath. It would be carrying the law so far as to work great injustice; cause it to shelter the guilty, and even invite to the worst consequences, both to society and the moral sense of mankind, if a married woman, who, having been made the victim of so gross an abuse as is alleged in this case, could not be allowed to seek redress from the law, on the ground of coverture. To sustain such a principle would be contrary to enlightened jurisprudence, to the dictates of pure morals, humanity, common sense, and I believe both to the spirit and letter of the law. It would excite and foster wrongs without remedies, and place the husband and wife beyond the reach of the protecting arm of justice, and thus annihilate a natural and legal right.

The full force of the argument of the learned counsel in support of the motion is felt, but I consider that the bearing of the cases cited by him against the exception, does not fully meet the one now before me. I have already stated in what instances the husband and wife cannot testify for or against the other, and the case put by Mr. Hirst, as to the incompetency of a husband to testify against the conspirators with his wife, although a nolle prosequi might be entered as to the wife, is sustained by the courts. But in the present instance, the wife was the abused party; on her the violence has been committed, and the offence can be made out but by her testimony. I cannot conscientiously interpret the law, as to work so great an injustice, as to deny the wife all

redress, by refusing to receive her oath, on the grounds raised against it.

Could the facts, in this case be made out by other testimony—was it not the wife of one of the parties charged, who through dire necessity was forced, for a redress of her wrongs, in defence of her violated person, to come and ask protection—then the argument of the learned counsel, would be successful. If I have mistaken the law, or drawn incorrect conclusions from the cases cited, an opportunity will be afforded the defendants to have both revised.

The motion is overruled, and the wife allowed to testify.

*The defendants were held to bail in the sum of* $10,000 *each for trial.*

Counsel for commonwealth, *W. White, esq.*
Counsel for defendant, *W. L. Hirst, esq.*

NOTE.—This case was preliminary to another charge, made by the same complainant aginst C. C. Shee and M. H. M'Ewen, for a conspiracy to commit a rape. The question as to the admissibility of her testimony, arose in the present case, and it is given here. Counsel in the latter were *White, D. P. Brown & Dallas,* for commonwealth; *Hirst & C. Wallace Brooke,* for defendants. In the latter case, the parties were bound over for trial, the testimony being sufficient to warrant it. The same motion as to the admissibility of the wife to testify, was made on the charge of conspiracy, but was overruled.